Porter, J.
delivered the opinion of the court. The plaintiff states that he caused to be made a policy oi insurance, which was subscribed by the Louisiana Insurance Com- ¶ . . . ¾ ., ¶ r pany, and by which they engaged, tor a certain premium, to insure the sum of $900 upon merchandize, laden on board the schooner Brutus, whereof one Brown was master, upon a voyage from New-Orleans to Neuvitas.— That goods were sliipped in which he, the petitioner was interested to the amount mentioned in the policy, that the schooner sailed on her intended voyage, and that the property put on board was lost by the fraud and bar-ratry of the captain.
The defendants pleaded the general issue, the judge a quo decided against them, and they have appealed.
When this cause first came before us, the evidence was so unsatisfactory that we remanded it for a new trial, it is now brought up with such additional testimony as the parties have been enabled to produce. Ante, 202.
*631 The defence set up is, that the master, Brown, was owner of the vessel, and that consequently barratry could not have been committed by him.
In support of this defence, we had at first the testimony of Nicholson,in whose name the schooner was registered — that Brown purchased her at a sale by the marshal — and that he (Nicholson) had no interest in said schooner,having paid for her to accomodate Brown, who never reimbursed him for the price.
Brown, in obtaining the register, made oath that the vessel belonged to Nicholson — and consequently, the register issued in the name of the latter.
The plaintiff, on the second trial, produced a bill of sale by public act, from one Etienne Debon, to John Nicholson, in which it is stated, that in consideration of a note of ⅜900. made by Wm. Brown to the order of, and endorsed by the vendee, he had sold and conveyed to him all his right, title and interest in the schooner, mentioned in the policy. To do away the effect of this instrument, the defendant offered to prove, by parol evidence, that the conveyance was made by Nicholson, to secure him for his endorsement. The judge *632 refused to receive the testimony, and a bill of exceptions brings before the court the correctness of the opinion which rejected it.
Had the opinion of the judge below been given in a case where the parties to a public act attempted to enlarge, or explain, or contradict it by parol evidence, we should not hesitate to express our concurrence with him, but the question now before us, is, whether third persons can be affected by an instrument, at the execution of which they did not in any way assist, which they did not sign, and to which they were neither parties nor privies.
There is no plainer rule of common sense, nor do we believe there is any more universally recognised maxim of law, than that the acts of one man "cannot bind another, unless he consents they should. If it were otherwise, our property, our lives, and our liberty, w ould be at the mercy of the most depraved members of the community.
We frequently, however, enter into contracts, by which our rights are made to depend on acts to be done, or that may have been performed by third persons; in such cases, these acts affect and control us, when *633 established by legal proof. But the declara- ^ , . tions ot those persons, that these acts have been executed, cannot be conclusive proof; they are at best but prima facie evidence.
Pothier, whom we always consult with advantage, tells us, that an authentic act proves against a third person, ran ipsam, that is to say, that the transaction which it includes has intervened. Pothier, Traité, des Ob. 704.
It might at first blush appear that the author intended to lay it down as a principle, that the act thus produced is conclusive, but in a subsequent part of the same treatise, n. 766, he observes, that the prohibition of parol evidence against or beyond the contents of an act, extends only to the parties to it; it does not affect third persons.
Evans, in his appendix, states, that this doctrine of Pothier is so connected with the essential demands of justice, that it may be stated as an invariable rule of law. Evans' Pothier, 223.
In our sister states they act on the same principle, and hold it as a general rule, that parties and privies are estopped from contradicting a written agreement by parol proof,* but the rule does not extend to strangers, who *634 have, an interest in investigating, and knowing the real truth of the case. 10 Johns. 230.
And our own law, has embodied and consecrated the same maxim. Febrero, p. 2, lib. 2, cap. 2, sec. 1, n. 25. Idem, lib. 3, cap. 3, sec. 2, n. 141.
A coincidence so general, proves the truth and utility of the doctrine, and it is our duty to apply it to this case, and all others of a similar nature, which maybe presented for decision.
Proceeding to do so, we hold the authentic act offered here, evidence that such an instrument was passed between Nicholson and Brown — that fact cannot be contradicted by the defendants. But further, they are not bound by it. The reality of the transaction, the truth of the different averments made in the deed; whether it was a real sale, or one, the object of which was alone to give Nicholson a security for his indorsement; all these matters are open to the defendants, because they never consented to this act, by which it is said the contrary is established. 18 Johns. 173. 2 Ald. and Barn. 136.
The case of Chabot vs. Blanc, 5 Martin, 354, would appear, unless examined with some at *635 tention, opposed to this decision; but that was , an action concerning real estate, and there the right of the parties to contradict, or rather destroy an act to which they were not parties, was controled by another principle of our law, which prohibits the reception of parol evidence, to create, or take away a title for immoveable property that commenced by writing. The case of Richards & Spicer vs. Lewis & al., 7 Martin, 221, turned on the want of allegation in the pleadings.
The cause must therefore be remanded to obtain the testimony offered.
It may perhaps be the means of saving costs to the parties, for us to state, that at the close of the argument, and for some days after, we were of opinion, that as Brown did not pay for the schooner, Nicholson was to be considered as owner, and that he remained so until the vessel was run-away with.— Under this idea, the plaintiff would have been entitled to recover, even taking as true every thing which the defendants offered to prove. After a most attentive consideration of the case, and a close examination as well of the authorities cited, as some others we have been enabled to look into: that opinion has chang *636 ed. We believe that the original character _ _ of the transaction (supposing it to be such as is represented by the appellee) was not altered by the subsequent failure of the master to comply with his engagement; that whether the vessel perished or not, he still remained debtor to Nicholson, and that this is a case in which the title is fairly tested by the application of the maxim res perit domino.
Livermore for the plaintiff, Duncan for the defendants.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be avoided and reversed, this cause be remanded for a new trial, and that the appellee pay the cost of this appeal.