Wells and another v. Compton and another.

•

---

MONTFORT WELLS and another *v.* JOHN COMPTON and another.

Where the meaning of an instrument is uncertain, the record of another suit, by a different plaintiff, but to which the defendant was a party, will be admissible in evidence to show, by the acts and declarations of the latter, what his understanding of the instrument was. The present plaintiffs, not having been parties to the suit, cannot avail themselves of the statements in the pleadings as judicial admissions, absolutely conclusive of the rights of the defendant. They must be considered simply as other declarations.

Surveyors' plats, made under the order of court, in a suit to which defendant, against whom they are offered, was a party, though the plaintiff was not, are admissible in evidence as circumstances, so far as they show acts of the defendant.

Where the intention of the parties to a contract is doubtful, under art. 1951 of the Civ. Code, the court will inquire into the whole conduct of the parties in relation thereto.

The statements of witnesses taken down in a suit, by a different plaintiff, but to which the defendant was a party, cannot, as a general rule, be received in evidence against the latter. *Aliter,* where the testimony of a witness so taken down is offered to discredit the evidence subsequently given by him; or where the declarations of a deceased surveyor are offered to explain his operations.

Parish Surveyors are regularly appointed officers known to the law, and when dead, their declarations, taken in other suits, may be used, when necessary, as evidence to explain their acts. So plats made by a Parish Surveyor under orders of court, in a suit to which defendant was a party, are admissible after the decease of the former, to prove the declarations of the defendant made at the time of the survey.

The record of another suit, when offered to support a plea of *res judicata,* is admissible to show what the parties claimed, and what was decided in such suit. So the record of another suit, to which the plaintiffs were parties, though joined with others and in a different capacity, is admissible against them, when offered by the defendants, who were plaintiffs in that case; the latter are entitled to the full benefit of any decision made on the rights of the parties, and to show that the plaintiffs have compromised any of their rights by that suit.

The official acts and certificates of Parish Surveyors are entitled to full faith and credit, in all of the courts of this State.

The *procès-verbal* of a survey made by a Parish Surveyor, is legal evidence of the acts which it recites, as that notice was given, that the parties attended, &c.

In the interpretation of contracts, the intention of the parties is to be ascertained, and effect given to it, and to all the clauses of the contract. No construction is to be given which will render important expressions useless. The intention must be determined by the words of the contract, if possible ; but where the intention is doubtful, the interest of the parties, or other contracts, may be referred to. Where a clause is susceptible of two interpretations, it must be understood in that sense in which it will have some effect. So, the manner in which it has been executed, or acted under, by both parties or by one, with the express or implied assent of the other, also furnishes a rule of interpretation. Finally, in doubtful cases, the construction must be against the party who has contracted the obligation.

The vendor of a tract of land is bound to put the purchaser in possession ; and where he sells at different times by separate portions, without boundaries, to different persons, the first purchaser must be satisfied before a second can obtain any portion of his.

In all surveys, courses and distances must yield to natural and ascertained objects.

APPEAL from the District Court of Rapides, *Waters*, J., presiding.

GARLAND, J. The petitioners represent themselves to be the owners of a tract of land containing six hundred *arpens, more or less*, on the left bank of the bayou Bœuf, adjoining Dent's estate below, and bounded above by the defendants'. They aver that the upper limit of their land is at the *first turn* of the bayou below the main Biloxi village, where the lower limit of the land of the defendants commences. They allege that the defendants were informed, and well knew of their rights, particularly from a survey made in their presence, but have, notwithstanding, taken possession of a part of their land on the bayou and on the back line, without any title, and that they refuse to surrender it. The plaintiffs state that they derive their title to the land, from a purchase made at the probate sale of the estate of Samuel Levi Wells, in the year 1829.

The petitioners further allege, that after the survey was made of the land in controversy, the defendants promised and agreed to surrender the same, but have since refused to comply with their agreement, and continue to hold possession. They pray for a judgment for the land, and for $2000 damages for its illegal detention.

The defendants answer, after a general denial, that Samuel L. Wells, the ancestor of the plaintiffs, owned twenty-five *arpens* front, by a *depth of forty*, on the left bank of the bayou Bœuf, bounded above by lands owned by George Mathews, which land

Saml. L. Wells sold to L. B. Compton, one of the defendants, from whom the other obtained title, and that the land thus sold was to include the Biloxi village. They deny that they are in possession of any land owned by the plaintiffs, and aver that, on the contrary, the plaintiffs are in possession of the lower part of the tract sold by their ancestor to L. B. Compton ; and they now claim, in reconvention, the portion of land within their limits, defined by a line commencing at the lower line of Mathews' estate, and running down twenty-five *arpens*. They pray that they may be quieted in their title to said twenty-five *arpens* front, and may recover $5000 damages from the plaintiffs for their wrongful detention of the land.

Several years after the commencement of this suit, the plaintiffs amended their petition, claiming damages of the defendants to the amount of $10,000, to which the latter responded, that, they have possessed in good faith, and if made responsible for rent or damages, that they are entitled to be paid for clearing the land, and for improvements put on it, worth $5000, which they claim in reconvention. They also present a plea of *res judicata*.

An agreement was entered into, by which the depositions of several witnesses, previously taken in other suits, were to be used as evidence in this, if admissible under the allegations, waiving all objections to the form of taking them.

The cause was continued from term to term for about ten years, several times upon the affidavits of the defendants or their counsel, and, at other times, without cause being shown. Some of the statements, in one or more of these affidavits, it will be necessary to notice hereafter.

On the trial, it was shown that Samuel L. Wells was the proprietor of a part of the Indian claims on the bayou Bœuf, purchased by Miller and Fulton, the history of which is given in the cases of *Compton* v. *Mathews* and *Wells' Heirs* v. *Compton*, (3 La. 128, 164,) and in some other cases. S. L. Wells claimed to be the owner of sixty-five *arpens* front, and, before the claim was acted on by the land officers of the United States and Congress, he claimed a depth of eighty *arpens*, on each side of the bayou ; but his claims were finally confirmed for only

forty *arpens* in depth on each side. A probate sale of a portion of this tract of land, was exhibited, showing that the plaintiffs had become the purchasers of six hundred superficial *arpens,* more or less. If there was more, they were to pay for the excess, at the rate of $12 50 per superficial *arpent;* if less, there was to be a deduction of price at the same rate. The plaintiffs, therefore, purchased whatever quantity of land might be found in the tract. It was further shown that, in the year 1808, Saml. Levi Wells agreed to sell "all his right, title, and interest" in and to fifteen hundred superficial *arpens* of the Indian lands to Leonard B. Compton, at the rate of two dollars the superficial *arpent,* payable in one, two, and three years, without interest. Five hundred *arpens* were to be on the west side of the bayou, and about these there is no controversy. The thousand *arpens* were to be laid off as follows : "The lower line to commence on the east side of the bayou Bœuf, and at the first turn in the said bayou below the main Biloxi village, and to run twenty-five *arpens,* one hundred and eighty feet to the *arpent,* measure of Paris, up the said bayou, *parallel* with the base line of the whole tract of the Indian claim, as it was run by Frederick Walther ; a line then to start at the upper end of the twenty-five *arpens* line as above, and to run at right angles with the course thereof, *till* it strike the said bayou, and then meandering with the said bayou to the beginning. And if there should not be one thousand *arpens* of land within the lines above mentioned, whatever may be wanting of said one thousand *arpens,* to be laid off on the back of the first line, in parallel lines, and the course of the line running at right angles to the first, to be continued." The tract of five hundred *arpens* was to be laid off with a front of twelve and a half *arpens,* with forty in depth. Samuel Levi Wells "engages with the said Leonard Compton, his heirs, &c., that in case the consideration money, or any part thereof should be paid, and after such payment being made, the claim of him, the said Wells, to the said land, on the final decision thereon be condemned and rejected, that then, in such case, the sum or sums so received by said Wells, his heirs, &c., shall be refunded or repaid to said Compton, his heirs, &c., without interest." It is further stipulated, in case the claim should not be confirmed, that Wells is not to be

liable for any improvements which Compton may put on the land. At the date of this sale, the defendants were living together on the land, and had their buildings on, or very near to the site of the Biloxi village, which was a well known place. The defendant John Compton, who afterwards purchased half of Leonard's interest, and, since the commencement of this suit the other half, has ever since occupied the place. From the Biloxi village, the bayou runs in a nearly straight course for a considerable distance, bearing a little to the left as represented by the survey; it then changes its course and curves gradually, until it forms a figure nearly resembling a horse shoe, the points or heels drawn close together. At the point where the bayou begins to deviate from its nearly straight course, and forms the upper part of the curve, is an elm tree, which has become celebrated from this controversy; and the public road from Alexandria strikes the bayou at nearly the same point.

About the year 1810, Philip B. Compton, a brother of the defendants, settled on the bayou about the apex of the curve, where he built a house, and cleared and cultivated the land for some distance above and below him. He remained at that place, until about the year 1820, when he moved into another house near the elm tree, where he lived for several years. The defendants contend that Philip B. Compton settled there with their permission, and held under them. The plaintiffs say that he was an intruder, or was there by permission of Samuel Levi Wells. That P. B. Compton was there during the lifetime of Samuel Levi Wells, and with his knowledge, there is no doubt. It is also very clear that Wells was very intimate and friendly with him, and with the defendants, up to the time of his death in 1815, and particularly with L. B. Compton, to whom he sold the land; and it is also evident, that no act of sale was made by the defendants to Philip B. Compton until 1825, some short time after which he re-conveyed to them.

The evidence leaves it doubtful whether a line was ever established, with the consent of S. L. Wells, below the improvements of P. B. Compton. That there is a line there, represented on the plat by the line 4 H, is certain, and that it was an old line in 1841. It commences at the lower part of the curve, and runs parrallel with

the other lines.   In the *procès-verbal* of a plat made under the or-
der of the  court in this case, dated in February, 1842, McCrum-
men, the surveyor, says, it was laid off "some few years since."   In
the *procès-verbal* of another plat made by McCrummen, the same
line is represented ; and he says that, at the request of Samuel L.
Wells, he had  laid off  the whole  tract of sixty-five *arpens* front,
only with a view to ascertain where the lower line would cross the
bayou, and  " where the several intruders on the land were situat-
ed on the bayou.   Such part of the lines as are dotted on the plat
were not marked in the woods."   This line is not a dotted one,
but the plat has no date, and it is  shown by the record, that Sam-
uel L. Wells had a son of the same name.   Whether this plat was
made at the request of the father or son, does not appear ; but it is
certain that the  former died  in 1815, and the law creating the of-
fice of Parish Surveyor was not passed until March, 1818.   But if
Samuel L. Wells, the vendor of Compton, did put him in posses-
sion by such a survey, there is no accounting, on fair principles,
for the suit instituted by Leonard B. Compton against Mathews in
1820, as the line of the latter is on this plat exactly as he contend-
ed  it should  run, and  as Compton said it should not.   The best
construction, therefore, which we can  put on it, is, that the plat
was made at the request of Samuel L. Wells, the younger, and
does not, therefore, bind the plaintiffs.   Alex. Compton, a witness
for the defendants, says in his deposition, that he does not know
that Samuel L. Wells ever caused  this line to be run or marked,
but that he recollects that in the year 1813, Wells visited the de-
fendants soon after the line was run, and, in company with them
and witness, examined the line and  marks or posts, when some
conversation took place between the parties about the line.   That
Wells made no objection, but appeared to be satisfied, and so ex-
pressed himself.   It is shown that this witness, at the time of giv-
ing his deposition, was in Texas, a fugitive from justice ; and fur-
ther, it is clear, that if he told the truth in this instance, he testified
falsely in the case of *Compton* v. *Mathews*, which case was tried
ten or eleven years ago.   His testimony in that case was taken
down in writing, and has been offered in this, and cannot be recon-
ciled with his present statements.   The statement of the Survey-
or, in his *procès-verbal*, does not, therefore, fix the period when

this line was run, and we do not think Alexander Compton a credible witness; so that all the testimony proves is, that the line is there, and that Philip B. Compton's improvements extended down towards it, below the elm tree.

In the year 1820, Leonard B. Compton, in whom the title to the land purchased from Samuel Levi Wells was then vested, commenced a suit in the District Court against the late Judge Mathews, alleging himself to be the owner of the tract of land described in the deed from Wells to him. In his petition he describes the land almost in the words of the deed, and says that he has had it surveyed by McCrummen " according to the above description, a plat of which is herewith filed, and ready to be exhibited on the trial of this suit." This plat was withdrawn from the record of the suit of *Compton* v. *Mathews*, by the attorney of the former, after its decision, but subsequently to the commencement of this suit. A duplicate of it has, however, been offered in evidence, and it shows that the defendants then claimed that the point of beginning should be at the elm tree, on the upper curve of the first turn or bend ; and the plats of survey filed in that suit, and the case itself, show that the defendants persisted that it was the true point of beginning, until the case was finally decided in favor of Mathews.   3 La. 128.

It is also shown that, at the time of the sale from S. L. Wells to L. B. Compton in 1808, the Indian claims were not recognized by Congress or by the Land Commissioners.   There had been a partition of the land between Clark, Fulton, Wells, and Miller, the co-proprietors, on a map which had been made by F. Walther, but as the country was covered, at the time of the partition in 1803 or 1804, by a heavy forest and stiff cane-brake, no dividing lines seem to have been traced, and it was in that condition when the sale from Levi Wells to L. B. Compton was made.

These are the material facts of the case.   Some others of minor consequence we shall touch upon, in connection with the different points that will arise.   Upon these facts, and the law, as the judge below, after a laborious examination, understood it, a judgment was given in favor of the defendants, and, upon their demand in reconvention, against the plaintiffs, for the land in their possession down to the line marked on the plat of the surveyor Phelps, 4, H ; from which judgment the plaintiffs have appealed.

*Elgee,* and *Dunbar,* for the appellants. The language of the deed is unambiguous. No doubt was ever entertained by the defendants as to the proper point of beginning the line, until after the decision in the case of *Compton* v. *Mathews,* 3 La. 128. In construing any agreement, the great object must be to ascertain the intention of the parties, at the time of the contract. Civ. Code, art. 1940. 12 La. 546. The rule that obscure or ambiguous clauses are to be construed against the vendor, is one of extreme severity, and to be resorted to only when all other modes of interpretation have failed. 3 Toullier, (Bruss. ed.) p. 447–8, Nos. 318–325. The acts and declarations of the defendants, furnish conclusive proof as to the correct point of departure. Civ. Code, art. 1951. In the case of *Compton* v. *Mathews,* we find the defendants, as far back as 1820, fixing the point of commencement at the elm tree. Their instructions to McCrummen, the surveyor, were to the same effect. The action against Mathews could only have been maintained, on the allegation that the elm formed the correct point of departure. As to the admissibility of the record of the case of *Compton* v. *Mathews,* see 2 Starkie Ev. 17, 22–24. 2 Phillips, Cow. & Hill's ed., 201, 205, 206, 207, 212, 213, and the authorities there cited. As to the admissibility of the declarations of deceased surveyors, see 1 Starkie Ev. 25–29. 2 Phil. Ev., Cowen & Hill's ed., 628–639. 6 Peters, 341. 7 Cranch, 296. Peters' C. C. R. 496. As to depositions taken in a former suit to which one of the present parties was a party, see Chitty's Eq. Dig. 991. The real intention of the parties, in 1808, was, that the defendants should take a fair proportion of back and front land for their thousand *arpens.* Parties cannot be permitted to deny in one suit, what they have alleged in another. Coke's Instit. 352. 10 Mass. 155. 2 Phil. Ev., Cow. & Hill's ed., 201, *et seq.*

The plaintiffs do not claim as heirs of S. L. Wells. The defendants must resort to an action of warranty against the heirs, for any deficiency in the land purchased by them. The rule, that the first purchaser shall take the whole of his portion, and the second, only what remains, does not apply to a case like the present, where the sale was by specific metes and bounds, and a part of those bounds natural ones. 4 Wash. C. C. R. 415. Admitting that the language of an instrument is to be most strongly construed

against the vendor, the utmost latitude to which the rule could be extended would be, to consider it, in case of doubt, as to a natural object, as giving to the vendee the right of selection.   In this case the defendants have made their selection, by adopting, in their suit against Mathews, the elm as the true point of beginning. When such a selection has been once made, it is binding.   There has been no mistake in the boundaries, on the part of the defendants ; and such mistakes can only be corrected, when manifest. The purchase made by the plaintiffs at the probate sale of their father, S. L. Wells, was in 1829, many years after the institution of the suit of *Compton* v. *Mathews*, in which the defendants contended that the elm was the proper boundary of their land.   The plaintiffs may have been influenced by this circumstance, in making their purchase ; and the defendants are estopped from gainsaying their own allegations in that suit.   2 Phil. Ev., Cowen & Hill's ed., 200, 205–7, *et seq.*

*O. N. Ogden* and *T. H. Lewis,* for the defendants.    Under the deed from Saml. L. Wells to L. B. Compton, the defendants are entitled : *first,* to a front of twenty-five *arpens,* in a line parallel with Walther's base ; *secondly,* to the quantity of one thousand *arpens* on the east side of bayou Bœuf, within the Miller and Fulton grant.   These points being settled, to wit, the extent of front, and the quantity, there can be no difficulty in fixing the proper place of beginning.   According to the deed, we must begin at the first turn in the bayou below the main Biloxi village. This expression, which, by itself, would be indeterminate, is rendered sufficiently clear by the context.   Taken in connection with the two controlling expressions before noticed, it can only mean such a point, within the turn, as will give the front and quantity mentioned.   This court has already decided in the case of *Compton* v. *Mathews,* 3 La. 128, that any part of the turn will satisfy this condition of the title ; and such a construction must be adopted *ut res magis valeat quam pereat.*   Code of 1808, 270.   Civ. Code, arts. 1943, 1946.   Comyn on Contracts, 23, 24.   As the plaintiffs claim to run the line, starting from the elm, the defendants will have but fifteen and a half *arpens* front, and cannot obtain the quantity to which they are entitled.   It has been urged that this was a sale *per aversionem,* and that the description of the boundaries

must control the other expressions of the deed.   But the lower
boundary has been shown to be indefinite, and we contend that
that the upper boundary is exactly twenty-five *arpens* from the
point, within the curve, at which the lower one is fixed ; and this
is the very question, which the court is now trying.   The case of
*Compton* v. *Mathews*, the record of which has been offered in evi-
dence, is *res inter alios acta*.   The plaintiffs in this action, were
not parties or privies to that ; and though it should be shown that
the defendants were, the record could not be received for want of
mutuality.   1 Starkie Ev. 221, 266, 267.   1 Munford's Rep. 402,
403.   2 Cond. Rep. 496.   3 Ib. 465.   Gill & John. 34–5.   One
of the present plaintiffs was a witness in that case, for which reason
the record should be excluded.   1 Stark. 221.   Another ground for
its exclusion, is, that the suit did not involve the question to be
determined in this.   1 Stark. 324.   The testimony of McCrum-
men is inadmissible.   The boundary in dispute is not an ancient
one, and hearsay evidence cannot, under such circumstances, be
received.   1 Stark. 33–4.   7 Cranch, 293.   10 Peters, 434, *et
seq*.   But, if admissible, it would not be conclusive.   It tends to
prove an error in fact on the part of the defendants ; and a loca-
tion made in error is not binding.   3 Mart. N. S. 11.   6 Ib. N. S.
701.   2 La. 499.   12 Ib. 544.   Even a judicial admission may
be revoked, in case of an error in fact.   Code of 1808, 314.   Civ.
Code, art. 270.   1 Whites' New Recop. 292.

Both parties claiming under S L. Wells, the defendants' pur-
chase, being the earliest, must be first satisfied.   Civ. Code, art.
843.   9 Mart. 81.   6 Mart. N. S. 700, *et seq*.   The deed from
Wells to L. B. Compton, must be so construed as to give effect
to all its clauses.   Civ. Code, arts. 1940, 1941, 1943, 1946, 1950.
12 La. 546.   If there be any ambiguity, it must be construed
most favorably to the vendee.   Civ. Code, arts. 1952, 2449.
Plaintiffs being purchasers from Wells, have no greater rights than
he had.   The vendor is bound to deliver the whole extent of the
premises sold, in the exact form stipulated.   Civ. Code, arts. 2467,
2468.   ‾Pothier, Vente, 47, 48.   Admitting the surveys relied on
by the plaintiffs to be legal evidence, if not in conformity to the
titles they can neither give, nor take away any thing.   3 Mart. N.
S. 12–16.   6 Ib. N. S. 701–2.   2 La 502.   12 Ib. 545.

GARLAND, J.* In this court, in addition to the able opinion of the judge, we have had the benefit of an argument distinguished for its ability, and of the counsel of one of our associates, who was not present when the cause was tried.

The first question by which we are met, is a plea of *res judicata.* It appears that in the year 1830, the plaintiffs, with their three co-heirs in the succession of Samuel Levi Wells, instituted a petitory action against the defendants, in which they claimed of them fifteen hundred *arpens* of land—five hundred *arpens* on the west side of the bayou Bœuf, and one thousand *arpens* on the east side, situated at the Biloxi village, bounded above by the plantation of Judge Mathews. They claimed, by inheritance from their father, his rights derived from the Indians, through Miller and Fulton. In answer to that action, the defendants set up as their title, the same deed of conveyance now presented, in which there is a clause that the legal title to the land is to remain in Samuel Levi Wells until Leonard B. Compton shall have paid the price ; and as there was no record evidence of his having paid it, the plaintiffs hoped to recover, supposing that he had not done so, or could not prove it, if he had. The case turned on that question entirely, as an inspection of the record, and the decision of this court, in 3 La. 164, will show. The plaintiffs failed in that suit, but it will be seen that the matters now in controversy were not involved in it. There was no question of boundary, nor was it the purpose of the parties to fix the point of commencement under the deed. The judgment says, that the plaintiffs shall take nothing by their suit, and quiets the defendants in their possession and title to the land claimed. But the question where that land is, was not in any manner touched or decided. The judgment gives no more than the deed gave. Besides this, the parties are not claiming in the same capacity, nor by virtue of the same right. This suit is in effect an action of *bornage.* The plaintiffs do not dispute the validity of the defendants' title, so far as it goes, but allege that they have got possession beyond the true boundary. The case does not come within the meaning of

* BULLARD, J. having been of counsel in this case, did not sit on its trial.

article 2265 of the Code, and the settled doctrines of this court. 7 Mart. N. S. 430.   5 La. 474.   19 La. 318.

A number of bills of exception were taken on the trial to the opinions of the judge admitting or rejecting testimony, which we will proceed to notice.

The first was taken by the plaintiffs to the opinion of the court rejecting as evidence, the record and depositions in the case of *Leonard B. Compton* v. *George Mathews*.   They offered them to prove, *first*, that *that* suit and the present are substantially the same, viz. to fix the boundaries of the tract of land sold by Samuel L. Wells to L. B. Compton, now in controversy ; *secondly*, to show that L. B. Compton claimed that the elm tree in the first turn of the bayou below the Biloxi village, was the proper point of beginning, from whence to survey the land claimed by him at that time. But the court rejected all " the evidence, except the record to prove *rem ipsam*, and the testimony of Kenneth McCrummen as hearsay evidence, and the plats referred to in his evidence."   The grounds of objection are stated by the judge in a very long opinion. We think that he erred in confining the evidence to the narrow grounds which he did.   He ought to have admitted it, to prove the acts and conduct of the party, and have given them their legal effect.   The great question at issue, was, where was the true point, to begin to run the twenty-five *arpens* line.   As the contract did not fix it in a manner satisfactory to all parties, the declarations and acts of the parties contesting were admissible, to prove what their understanding of the agreement was.   The judge says, there is no doubt but that the declarations of Leonard B. Compton would be admissible to show that the elm tree was the proper point of beginning.   If his parol declarations were admissible, we see no reason why his declarations in a petition, filed in court, should be rejected.   As the plaintiffs were not parties to that suit, they cannot avail themselves of the statements so made as judicial admissions, absolutely binding on the party, and conclusive as to his rights ; but we have no doubt that the allegations made, ought to be considered as other declarations would be, and as such as forming a link in the chain of circumstances going to prove that the plaintiffs and Compton at one time entertained the same opinion, as to the meaning of the expressions in

the deed. The plats made under the order of the court, so far as they show acts of the party, ought also to have been admitted as circumstances, and proper consideration should have been given to them. The general rules in relation to the interpretation of contracts, require us to examine the whole conduct of the parties in relation to them, and thereby judge of their meaning. Civ. Code, art. 1951. The statements of the witnesses taken down in the suit of *Compton* v. *Mathews*, cannot be received as evidence for the plaintiffs, unless it be perhaps the declarations of the deceased surveyor to explain his operations, or to use them, as in the case of Alexander Compton, to discredit the evidence given on this trial. 8 Mart. N. S. 382. 13 La. 76.

The next bill of exceptions was taking by the defendants, to the opinion of the court receiving in evidence a plat made by McCrummen, the parish surveyor, of a survey made by him under the order of the court in the case of *Compton* v. *Mathews*, and also his testimony on the trial of that case. The judge admitted it as hearsay testimony, to show the directions and requests of L. B. Compton, when the survey was made to establish the boundaries of the tract of land purchased by L. B. Compton of Samuel L. Wells. It was proved that McCrummen and the chain carriers were dead, and that he was the parish surveyor, and had made the survey under the order of the court. We think the judge did not err. Surveyors are officers known to the law, appointed by the Governor and Senate ; they give bond, and take an oath to perform their duties ; they are required to keep a record of their proceedings, and to give copies, which are evidence in the different courts of the State. B. & C. Dig. 796, sec. 1, p. 798, sec. 10. They are specially required faithfully to execute all orders of survey directed to them by any of the courts in the State ; and they make surveys generally. Ibid. p. 796, sec. 4. The acts of such officers are entitled to due weight, and if they are dead, we see no objection to appealing to their recorded testimony in a suit, to explain their acts, when it is required or necessary to understand them. 2 Phillipps on Evidence, 629, 632, 633, 634, 635. 6 Peters, 341. 7 Cranch, 296.

The defendants offered in evidence the record of the suit of the heirs of *Wells* v. *J. and L. B. Compton*, for the purpose of sup-

porting their allegation of the plaintiffs' rights having been precluded and settled by it. The latter objected, on the ground that the case was between other parties and for a different cause of action. The judge would not receive it as evidence, but admitted it to prove *rem ipsam*, and the defendants excepted. We think the judge should have admitted the record, to prove what the parties claimed, and what had been decided, and have given it such legal effect as it was entitled to. The objections seem to have been more to the effect of the evidence, than to its admissibility. The plaintiffs were parties to that suit, though in a different capacity, and connected with others; yet, if they had impaired or compromised any of their rights by that suit, or the court had decided on them, the defendants certainly had a right to the full benefit of every thing that had been adjudged. 2 Chitty's Equity Digest, 990, 991.

In relation to the defendant's bill of exceptions to admitting in evidence the plat of the whole Indian claim, approved by John Dinsmore, Principal Deputy Surveyor, we do not think that the judge erred. There is no doubt that the certificate was sufficiently formal, and the effect of the plat should have been considered.

The defendants excepted to the opinion of the judge, excluding the sixth, seventh, ninth, and tenth interrogatories propounded to Alexander Compton, and the answers thereto, on the ground that the interrogatories contained leading questions. The judge, we think, erred. The interrogatories are somewhat of the character stated; they ask the questions in an affirmative and negative form, yet they do not, in our opinion, so clearly indicate the answers to be given, as to authorize their rejection entirely.

After the plaintiffs and defendants had closed their evidence, the former offered as rebutting evidence, a plat of survey signed by K. McCrummen, parish surveyor, and the record of the same; to which the defendants objected, on the grounds that this was not rebutting evidence, but evidence in chief; that the survey was an *ex parte* proceeding, not made under an order of court, or of other competent authority, and that none of the statements made in the notes were on oath; that the defendants were not present when the survey was made, nor ever notified to attend; and that it is not properly certified. This plat is dated in March, 1830. In

the *procès-verbal*, the surveyor states that, at the request of one of the plaintiffs, he has surveyed, measured, and marked, the boundaries of a tract of land on the bayou Bœuf, in conformity to a sale made by Levi Wells to Leonard B. Compton, in the year 1808, for 1000 *arpens*. He states that he began at the elm tree on the next turn below the Biloxi village, and ran up parallel to the ascertained base of the Indian purchase. He then gives the courses, distances, marks, &c., so as to contain 1000 *arpens*. He states that written notices were given to the parties, that the survey would commence on the 15th March, 1830, and that John and Leonard B. Compton were present on the ground, and made no objection to the location of the tract. This plat is certified to be recorded in book A of the Records of Surveys, for the parish of Rapides, on pages 160 and 161, and the certificate is signed by the surveyor. The court admitted the plat, and notes of reference, so far as necessary to explain the same, on the ground that its introduction to that extent was authorized by law ; but refused to receive the *procès-verbal* farther than it went to explain the diagram ; and rejected that part which stated that the parties were notified, and that they were present at the survey, and made no objection thereto, on the ground that the surveyor could not legally give such a certificate. To the latter part of this opinion the plaintiffs excepted, and to the former the defendants took their bill of exceptions. Articles 829, 830, and 831 of the Civil Code specify in what manner a surveyor shall act, when called upon to fix the limits between adjacent proprietors. He must make a *procès-verbal* of his work, in the presence of two witnesses, called for the purpose. He is to notify the parties in writing to attend if they think proper, which he must mention, and to make a record of his proceedings and plans, and of all other necessary acts. We have before stated that, by different acts of the legislature, important duties are required of parish surveyors ; and their official acts and certificates, when their duties are performed, are entitled to full faith and credit in all of our courts. The only serious defect we see in the *procès-verbal* of McCrummen is, that it is not attested by two witnesses ; but the defendants did not object to it on that ground. They assert roundly that no such document can be given in evidence against them, for the causes before stated. We

think that the operations of parish surveyors, when reduced to writing, and represented by plats, as required by law, are legal evidence of what is stated in the *procès-verbal*. It is important that these records should be regularly kept, as they are the legal evidence of the establishment of boundaries. There would be but little security that boundaries would be permanent, if the *procès-verbal* made by the parish surveyor when fixing them, ceased to be evidence as soon as he was dead or out of office ; and a defendant might compel a plaintiff to prove, in every instance, by parol testimony, that notices were given, and that the parties attended. In many cases this could not, from the lapse of time, be established ; and in this, no other means exist of proving the survey but by the *procès-verbal*, the surveyor being dead. We are of opinion that the judge did not err, in receiving the document as far as stated in the defendants' bill of exceptions ; but that he did err, in rejecting that portion set forth in the plaintiffs' bill. He should have received the whole document, and have weighed it, with other circumstances. Under art. 835 of the Code, a party is not prevented by such a survey, from resorting to a court of justice to rectify any erroneous proceedings or injury that may result from it.

The remaining bills of exception it is unnecessary to notice ; and as we are approaching the merits of the case, it may be proper to mention a few other facts connected with it, and to recapitulate some already stated. There cannot be a doubt that, when Samuel L. Wells, in the year 1808, sold to Leonard B. Compton the quantity of one thousand superficial *arpens* on the east side of the bayou Bœuf, none of the parties knew where the dividing line between the lands of Fulton and Wells was ; but that they only supposed where it probably would be. From the testimony of Josiah Johnston it is clear that no line had been marked, as he says that L. B. Compton and Mathews established a boundary, where they supposed it to be, several years after their respective purchases from the original proprietors. We have very little doubt but that both Wells and Compton believed it to be about twenty-five *arpens*, from the first turn in the bayou below the Biloxi village to Fulton's line, and that in the area they proposed to make there would be something approaching to one thousand superficial *arpens*. The proprietors of the Indian claims, at that

time, contended that their depth was eighty *arpens* on each side of the bayou, or at the least forty *arpens*. For the latter quantity they were confirmed, and the location made by McCrummen gave that depth, which location was approved by John Dinsmore, Principal Deputy Surveyor for the south-western land district, who had authority to do so. In the answer filed by the defendants in this suit, they admit that, at the time of the sale from Samuel L. Wells to Leonard B. Compton, the former was the owner to a depth of forty *arpens* from the bayou, and on the western side the sale specially conveys to that depth. Had the location of McCrummen not been disturbed, there would be no necessity for the defendants to go below the elm tree, to get the quantity of land they claim, as there would have been a sufficient quantity back to give it; but it pleased the Commissioner of the General Land Office, and some other officers of the general government, to change this location since the commencement of this suit, whereby a line running from the elm tree, parallel with the upper line of the tract, has been so much shortened, that the quantity cannot be found. It does not appear from the record that the plaintiffs ever assented to this change, nor is it shown what particular agency the defendants had in effecting it; but it appears, from one or more of the affidavits made by John Compton, to obtain a continuance of the case, that he knew that such a purpose was agitated, and approved of it.

The main difficulty in this case is to ascertain the point on the bayou where the twenty-five *arpen* line is to commence. That once fixed, every thing else follows as a consequence.

The old Civil Code, page 270, articles 56 to 64, and the present Code, articles 1940 to 1957, lay down precise rules for the interpretation of contracts, and embody the principles contained in the best commentators on the jurisprudence of those countries, from whence we have drawn many of our laws. The decisions of this court have been based on them repeatedly; and the doctrine that the intent of the parties is to be ascertained, and effect given to it, and to all the clauses of the contract, have become legal axioms (8 Mart. N. S. 365); and no construction is to be given that will render important expressions useless. 9 Mart. 635. The intention of the parties must be determined by the words of the contract,

if it can be done. Their interests must be looked to ; and other words may be referred to, as may other contracts, when the intention of the one under consideration is doubtful. When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect. The manner in which one or both of the parties have executed the contract, or acted under it, with the expressed or implied assent of the other, also furnishes a rule of interpretation. Civ. Code, art. 1951. And finally, in a doubtful case, the agreement is to be interpreted against him who has contracted the obligation. Arts. 1952, 1953.

The doctrine that the seller must put the purchaser in possession of what he purchases, is admitted ; and it is further admitted, that if one owns a large tract of land, the first purchaser must have his portion before a second one.

We will now analyze the contract of sale. *First*, a point was to be fixed, at the first turn of the bayou below the Indian village ; *secondly*, a line was to run twenty-five *arpens*, parallel with the base line of the whole tract ; *thirdly*, the line was to run to the bayou, and, with it to the place of beginning ; *fourthly*, if the area thus formed, did not contain one thousand superficial *arpens*, the deficiency was to be laid off back of the line first run, between parallel lines, which were to be at right angles with the said line.

It is perfectly clear from this statement, that both Wells and Compton supposed, at the time, that the area made by them would comprise one thousand superficial *arpens*, and that the line first to be run would be a back line, if that quantity of land was found, if not, that the deficiency was to made up back of it, between parallel lines. That they believed there would be an abundance of land in the rear, cannot be doubted, for the Indian claims were supposed to have been eighty *arpens* in depth, and the defendants admit that they were forty.

It is a well settled rule, in all surveys, that courses and distances must yield to natural and ascertained objects. The Supreme Court of the United States say it is a universal rule. 6 Wheaton, 580. 5 Cond. Rep. 194. The first turn in the bayou Bœuf is a natural object, and wherever that is, the line must begin. It is to be observed, that in this deed a peculiar phraseology is used. It does not use the general word *bend* of the bayou, but it speaks of

the *first turn* in it. The Civil Code, art. 1941, tells us, that the words of a contract are to be understood in their common and usual signification. Now we will suppose a man of common sense to be placed at the point where the Biloxi village stood, looking down the bayou, and to be asked where the *first turn* in the stream is? Can any one believe that he would point across the bend, to his right, and say it is there, or that it may be a little farther up, or that it may be any where on the lower or upper side of the bend. It may be well to state that, for some distance below the village, the bayou is nearly straight; it then makes a bend or curve for a considerable distance, and runs back again towards the same point. It appears to us, that the most common and usual signification of the *first turn*, would be the first clear deviation or deflexion from a direct course, or, at the most, that it could not go beyond the apex, or most projecting point in the curve.

Let us suppose, for a moment, that the line were to commence at the point contended for by the defendants; what would be the result? To run it parallel with Walther's base line of the whole claim, as laid down by Phelps, the surveyor would have at once to cross the bayou, and after running for a short distance on the west side of it, would be forced to cross again to the east, and after running for several *arpens* in the water, or very close to it, would go on his course, without having given a single *arpent* of land on the west side to the defendants, because they were not to have any there. Again, the point of departure contended for by the defendants, is about nine *arpens* below the point where the bayou first changes its direction, at the elm tree. We have said, that we do not doubt, but the parties to the sale supposed, that the area first described would probably contain one thousand superficial *arpens*; and taking this to be true, would it not have been a very vain thing to run a line along the front, or in the bayou, for eight or nine *arpens*, and not have thereby given the purchaser any land. He would have a line only, between the water and the land, on the banks of the stream belonging to the seller. Besides this absurdity, we are met by another. In prescribing how the area is to be formed, the deed directs certain lines to be drawn, and the meanderings of the bayou to be then followed to the place of beginning. If this be complied with, in order to get to the beginning,

for which the defendants contend, it would be necessary to cross the first, or twenty-five *arpens* line, or to run on it for eight or nine *arpens*, without adding once inch to the extent of the area. We can see no motive that the parties could have, for fixing a line that was not to give to one, nor take from the other; and it is not probable that any one would have extended a line a great distance, merely to cut off the front of his land.

But, say the counsel for the defendants, the line must have been intended to commence lower down on the curve, for it has been since ascertained that a line of twenty-five *arpens* in length cannot be run, beginning at the upper part of the curve, without running into the limits of a neighboring proprietor; and the line must be that long. We have no doubt but the contracting parties expected this line would be twenty-five *arpens* in length, and designed it to be so. But those expectations have not been realized, because the parties were in error as to the facts. If it had not been intended to fix the point for the line to begin on the upper turn of the bayou, how could it be known at what point below it was to commence, as the line of Fulton was not then known? The counsel reply, (and so the defendants have alleged in their answer,) our line must commence at Fulton's, now Mathews', lower line, and run down until we get twenty-five *arpens*; but this is in direct opposition to the deed, which says, that the line must run up, and not down.

We will now see how the defendants, for a long time, understood this clause in the deed. In the suit which Leonard B. Compton instituted against Mathews, he alleges that he claims according to a plat of survey filed with his petition. It is shown that this plat fixed the lower boundary at the elm tree; and the defendants adhered to it until they were defeated in that suit. They pointed out this tree to surveyors as being the correct point from which to commence running the line; and, after the plaintiffs purchased the land adjoining them, they still admitted this tree to be the proper boundary, but did not give up the land below it. The counsel for the defendants say that these acts and admissions were made through error, but whether of fact or law is not precisely stated. Suppose this to be true, has it not been very clearly shown that Wells was also in error, in supposing Fulton's lower line to be so

Wells and another v. Compton and another.

near ? We think it has, and consider the one error as excusable as the other.

But, say the defendants, if you do not permit us to run our line down the bayou, we shall not get the quantity of land which we purchased. This may be true ; but the deed does not say that you are to go down the bayou to get the quantity. It says that you must go back, and that does not mean that you must go in front. But, repeat the counsel, if confined in this way, we must lose the land sold to us. In answer to this, it may be asked, is this the fault of Samuel Levi Wells ? When he sold to you, all parties supposed that he had a great depth to his claim. You say yourselves that he had forty *arpens* in depth, when you bought ; and if you have lost it since, he is only responsible in warranty. There is a special clause in the conveyance providing for the case of the United States, not recognizing the claim, and it is possible that the warranty may go beyond the stipulation in the act itself, as against the heirs of Samuel Levi Wells ; but, upon that point, we express no opinion.

The defendants allege that they purchased a certain quantity of land out of a larger tract belonging to Samuel Levi Wells, and that he, or his heirs, are bound to deliver it to them. It is very true that the defendants agreed to purchase a certain quantity, but they bought with a particular boundary and within certain limits, and they cannot claim beyond them. The case relied on in 6 Mart. N. S. 700, is one in which a certain quantity of land was sold, without boundaries, to be taken out of a larger tract, and it was correctly held that the first purchaser must be satisfied. In this case, the heirs of Samuel Levi Wells are not parties. The plaintiffs do not sue as such, and none of the pleadings call upon them to answer in that capacity. The plaintiffs claim rights purchased from the estate of their father ; they may be responsible as his heirs, but they are clearly not responsible as such, until called on in a legal manner.

We will now return to that part of the case, defining what is the first turn in the bayou, below the Biloxi village. The defendants say that their right to consider any part of the bend or turn, as a proper place for their first line to begin, has been decided by this court, in the case of *Compton* v. *Mathews*, 3 La. 139–145.

The learned judge who delivered the opinion of the court in that case, says, " the most definite and controlling call in this title, is, at the first turn in the bayou below the Biloxi village. By the plat of survey returned in this cause, it appears the plaintiff has taken for his departure, in running the base line, an elm tree which is at the upper end. The expressions in the title, ' *at the first turn in the bayou*,' would be satisfied, either by a location on the lower end, or the upper end of the turn. Were it material in this case to decide the point, it would, perhaps, be correct to say, that a middle point between the upper and lower ends, formed the proper beginning. The plaintiff, it appears, once entertained the idea, that any spot at the turn would satisfy these calls." Again the court say, " this call, we see, was at the first turn in the bayou, below the Beloxi village. Expressions which gave the purchaser the same right to begin at the lower part of that turn, as on the upper."

In relation to this opinion, it is proper to observe that it is merely an *obiter dictum*. It was not necessary to the decision of the case, as was mentioned by the court, and the plaintiffs in this case were not parties to it; and we doubt very much, whether the court would, with the same evidence and reflection that we have given to the subject, again say, that the first turn in the bayou means any portion of the bend or curve. The defendants did, at one time, appear to think, that any part of the turn would satisfy the call of the title ; but it appears that they abandoned this idea, and most perseveringly acted on a different one for a number of years ; or, to make the most of their conduct, it would seem that they intended to be prepared for any contingency, and, if they could not get the land above, to try to get it below, after having approved a proceeding by which it could not be had in the rear.

To what has been said in previous decisions of this court we always look with much respect, although the reasons assigned may not have been exactly called for ; and, in most cases, we concede our own impressions, to preserve uniformity in the decisions of this tribunal. We will, therefore, in this case, go as far in fixing the point of beginning, as the court intimated it would do in the case of *Compton* v. *Mathews*. That is, we will fix the

Wells and another v. Compton and another.

point at the apex, (if the expression be a proper one,) or most projecting part of the curve, at ordinary high water mark in the bayou. This will place the line, according to the plats and evidence, some distance below the elm tree, and entitle the plaintiffs to recover up to it. In doing so, we give the defendants as much land as possible, without directly violating the plain meaning of the expressions used in the sale.

The judgment of the District Court is, therefore, annulled and reversed; and we do further order and decree, that the plaintiffs, Montfort and Thomas J. Wells, do recover of the defendants, John Compton and the legal representatives of Leonard B. Compton, deceased, all the land below a line to commence on the bayou Bœuf, at the point marked by this court, in red ink, S. C., on the plat made by A. G. Phelps, Parish Surveyor, under the order of the District Court; and that a line be drawn from said point to the back line of the claim of Miller and Fulton, as represented by the plat made by A. S. Phelps, United States Deputy Surveyor, approved Oct. 8th, 1837, parallel with the line A. B. on said map of said A. G. Phelps, Parish Surveyor, and at right angles with the base line of Walther's survey, as represented on said Phelps' plat. And the said plaintiffs are quieted in their title to all the land below said line, and the defendants to all above it. The defendants to pay the costs of this appeal, and all those in the District Court up to this time. The line now established, to be run at the expense of both parties. And, as relates to rents, fruits, and improvements, it is ordered that this case be remanded to the District Court, to be proceeded in according to law; and in the mean time no writ of possession to be issued.